**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

                v.

BENNY SALERNO,

        Defendant.

CRIMINAL NO. 3:10-CR-301

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court are Defendant Benny Salerno's Motion to Produce and Preserve Notes, Reports and Evidence; Motion to Inspect Physical Evidence and *Brady* Material; Motion for Bill of Particulars; Motion to Strike Surplusage and Unnecessary, Prejudicial Portions of the Indictment; Motion for Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure 262; Request for the Accused Pursuant to 404(b); and Motion to Dismiss.

Defendants' motions will be granted in part and denied in part.  His requests for production of notes and 404(b) evidence will be denied because the Government has agreed to comply voluntarily.  His motion for Physical Evidence and *Brady* Material will be dealt with as follows: (1) granted as to only statements that fall under Rule 16; (2) denied as to agency statements because he is not an organizational defendant; (3) denied as to *Brady* material because the government agrees to comply; (4) denied as to grand jury transcripts because he has not met the standard for disclosure; and (5) denied as to certification because no law supports the request.  His motion for a Bill of Particulars will

be denied based on unfairness to the United States, but his motion to strike surplusage will be denied because the Indictment's references to Pennsylvania law are prejudicial and irrelevant to the allegations.  His motion for Jencks Act material will be denied because a district court cannot compel early disclosure.  Finally, his motion to dismiss will be granted in part based on the untimeliness of certain allegations in Count III, but denied in part because the Indictment is sufficient and not impermissibly duplicitous.

## I. Background

**A. Facts Alleged in the Indictment**

Defendant Benny Salerno owned and operated Salerno's Pharmacy, a closed pharmacy located in Sciota, Monroe County, Pennsylvania.  A closed pharmacy is one that does not do retail business with the general public, but rather provides prescriptions only to health-care institutions such as hospitals, personal-care homes, and nursing homes. Mr. Salerno was at the pharmacy on a daily basis and was responsible for its management.

Salerno's Pharmacy dispensed most of its prescription drugs using "blister packs": cards with pre-formed holders for each individual pill.  Pharmacy employees would take drugs out of manufacturer stock bottles, place them into individual blister pack cards, seal the cards, and label them with the patients' names, type of medication, and other information required by law.  The pharmacy would deliver the sealed and labeled blister packs to institutions, then bill Medicaid and other third-party payers.

Institutions would frequently return unused portions of the drugs to the pharmacy. Mr. Salerno directed pharmacy technicians to remove the unused pills from returned

2

blister packs and then place them in containers in front of stock bottles of the type and brand of pharmaceutical that the technician believed the pill to be.  Then, a pharmacist reviewed the medications to determine whether the pills in the containers were the same type as the bottle near which the pills were stored.  If the pharmacist decided there was a match, the pharmacist would pour the returned pills back into the manufacturer stock bottles, commingling them with the original pills in the bottles.  The mix of returned pills and original pills would be used to fill more blister packs that were then dispensed to health-care institutions.  This conduct continued between January of 2001 and March of 2006.

## B. Law Discussed in the Indictment

The Pennsylvania Pharmacy Act, 63 Pa. Cons. Stat. Ann. §§ 390-1 to -13, prohibits the acceptance back and redistribution of any unused drug (or part thereof) after it has left the premises of the pharmacy, unless the drug is in the original sealed container with the name, lot number, and expiration date on the original manufacturer's label, *id.* § 390-5(a)(9)(xi).

The federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399d, makes unlawful any act that causes a drug to be misbranded after it has moved in interstate commerce and while it is held for sale, *id.* § 331(k).  A drug is misbranded if it is "false or misleading," *id.* § 352(a), or if it is missing any information required under the authority of the FDCA, *id.* § 352(c), such as an expiration date on its outer package, 21 C.F.R. § 211.137, 201.17, or a correct lot number, *id.* § 201.18.

## C. Procedural History

On October 19, 2010, a federal grand jury returned an indictment against Mr. Salerno, charging him with three counts: (1) False Statements Relating to Health Care Matters in violation of 18 U.S.C. § 1035; (2) Health Care Fraud under 18 U.S.C. § 1347; and (3) Causing Drugs to Become Misbranded in violation of 21 U.S.C. § 331(k).  The indictment also contained a forfeiture allegation.

Mr. Salerno entered a not guilty plea on November 12, 2010.  He filed the instant motions on April 14, 2011.  The motions have been fully briefed and are ripe for disposition.

## II. Discussion

## A. Motion to Dismiss

Mr. Salerno seeks the dismissal of his indictment on three grounds.  First, he argues that the indictment is improperly duplicitous.  Second, he claims that the statutes of limitations on all three offenses have expired.  Finally, he argues that the indictment is insufficient as a matter of law under Federal Rule of Criminal Procedure 7.

### 1. Duplicity

Mr. Salerno alleges that all three counts of the indictment are duplicitous because they each allege multiple instances of conduct occurring over a five-year period. Duplicity is "the improper joining of distinct and separate offenses in a single count."[1] *United States v.*

---

[1] The Government states that the joinder of two or more offenses in the same count is permitted under Federal Rule of Criminal Procedure 8(a) where the offenses are part of a common scheme, but this is a misreading of the rule.  Rule 8(a) states that *one* indictment "may charge a defendant *in separate counts* with 2 or more offenses" if the

*Rigas*, 605 F.3d 194, 210 (3d Cir. 2010).  To determine whether it is proper to join separate allegations in one count, courts must look at the statutory language of the offense to determine the "proper unit of prosecution."  *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998); *see also Sanabria v. United States*, 437 U.S. 54, 69 (1978) ("It is Congress, not the prosecution, which establishes and defines offenses.").

An examination of the statutory language suggests that the United States may properly join separate and distinct allegations under Counts I and II.  I previously held in *United States v. Salko* that the United States may charge a single count of health-care fraud under 18 U.S.C. § 1347 to prosecute a scheme of health-care fraud that involved multiple executions of fraud.  No. 1:07-CR-0286; 2008 WL 4006747, at *4 (M.D. Pa. Aug. 26, 2008); *accord United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006).   I now hold for similar reasons that the United States may charge a single count of false statements relating to health-care matters under 18 U.S.C. § 1035 to prosecute multiple instances of conduct related to one scheme.  Just as § 1347 prohibits "a scheme . . . to defraud any health care benefit program," § 1035 penalizes any person who "falsifies, conceals, or covers up by any . . . scheme . . . a material fact."  Congress's decision to refer to a scheme in both statutes suggests that it is appropriate to charge multiple acts of conduct in one count where the acts all contributed to the same scheme.  *See Root*, 585 F.3d at 154 (finding no duplicity where defendant was charged with one count of tax evasion for multiple acts occurring as part of a three-year scheme); *Haddy*, 134 F.3d at 548-49 (finding no duplicity where defendant was

---

offenses are part of a common scheme.  Fed. R. Crim. Proc. 8(a) (emphasis added); *see also* 9 Fed. Proc., L. Ed. § 22:1055.  Thus, Rule 8(a) dictates guidelines for joinder of offenses in one indictment, not joinder of offenses within one count.

charged with one count of securities fraud for multiple acts occurring as part of an eleven-month scheme). Mr. Salerno argues that the holding from *Salko* should not apply here because *Salko* involved a shorter period of time (the indictment alleged events over several months as opposed to several years) and separate counts for each patient.  But the specific facts of *Salko* were not the foundation for that decision; rather, the language of § 1347 was dispositive.  Because the statutory language indicates that a violation of §§ 1035 and 1347 can consist of multiple acts towards one scheme, neither Count II nor Count III is duplicitous.

The statutory language of 21 U.S.C. § 331(k), however, suggests that the appropriate unit of prosecution is only one instance of conduct.  Section 331(k) prohibits:

> "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, tobacco product, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."

21 U.S.C. § 331(k).  Unlike the health-care fraud or false statements related to health-care matters statutes, § 331(k) does not refer to a "scheme."  Instead, its language suggests that the violation consists of individual acts ("doing of any other act"; "if such act is done") and not many acts together.  Therefore, Count I's inclusion of multiple allegations of acts leading to misbranding in one count is duplicitous.

Even though Count I is duplicitous, the Third Circuit has determined that duplicitous charging is impermissible only where it risks unfairness to the defendant.  *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009); *accord United States v. Murray*, 618 F.2d 892, 897 (2d Cir. 1980) ("If the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations [underlying the

doctrine]."). Potential fairness concerns include "(1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution. *Root*, 585 F.3d at 154.

Here, Mr. Salerno does not face any unfairness based on the duplicitous charging. Any concerns he has about the concealment of a not guilty verdict or the unanimity of jurors can be cured by appropriate jury instructions and special interrogatories. *See id.* at 162. Mr. Salerno has adequate notice of the charge because the Government clarified in its brief and oral argument that the charge includes all transactions for blister packs with the exception of those involving controlled substances, and it provided a CD-ROM listing all 250,952 claims involving allegedly misbranded pharmaceuticals. Further, he will not be prejudiced by the concealment of a not guilty finding as to one incident or in terms of appropriate sentencing. To the contrary, Mr. Salerno benefits from facing a single charge that encompasses all pills in blister packs dispensed during the five-year period as opposed to facing hundreds of thousands of separate counts for each individual act of misbranding. *See id.* at 155 ("In such circumstances, duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme.") (quoting *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006)). Finally, no double jeopardy concerns exist here because the government concedes that the statute of limitations on all charges has run. Because none of the purposes of the prohibition against duplicity are implicated by the government's charging of multiple

allegations in Count I, the count is not impermissibly duplicitous. Mr. Salerno's motion to dismiss on this ground will be denied.

### 2. Statute of Limitations

Mr. Salerno also moves to dismiss the indictment because the statutes of limitations have expired. All three offenses have a statute of limitations of five years. 18 U.S.C. § 3282 (five-year statute of limitations for all federal noncapital offenses). Because the grand jury returned the indictment on October 19, 2010, any conduct occurring prior to October 19, 2005 would fall outside the statute of limitations. The indictment, however, includes conduct occurring as far back as January 1, 2001.

The Government responds that the indictment is timely because all three counts allege continuing offenses. Statutes of limitations generally begin to run when a crime is complete. *Toussie v. United States*, 397 U.S. 112, 115 (1970). Where there is a continuing offense such as a conspiracy, however, the limitations period begins to run at the end of the last act that was part of the offense. *United States v. Amirnazmi*, 645 F.3d 564, 592 (3d Cir. 2011). Thus, if all three counts here are continuing offenses, the indictment is timely because the last act would have occurred in 2006. To determine whether a crime is a continuing offense, a court must look at "the explicit language of the substantive criminal statute" as well as "the nature of the crime involved." *Toussie*, 397 U.S. at 115. The Supreme Court emphasized in *Toussie v. United States*, however, that "the doctrine of continuing offenses should be applied only in limited circumstances," based on "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" *Id.* (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)). In *Toussie*, the Court held

that the "single, instantaneous act" of failing to register for the draft was not a continuing offense.[2] *Id.* at 117.

The Government correctly characterizes Counts I and II as continuing offenses, but there is no support for its argument that Count III is one.  Although the Third Circuit has not addressed the issue of whether health-care fraud under 18 U.S.C. § 1347 is a continuing violation, several courts have held that it is.  *See, e.g.*, *Davis*, 471 F.3d at 791; *United States v. Hickman*, 331 F.3d 445, 447 n.8 (5th Cir. 2003).  This conclusion logically follows from § 1347's "scheme" language.  No court, however, has analyzed whether 18 U.S.C. § 1035 or 21 U.S.C. § 331(k) are continuing offenses.  Because 18 U.S.C. § 1035 also refers to a "scheme," as noted above, it makes sense to interpret it as a continuing offense as well.  The statutory language of 21 U.S.C. § 331(k), on the other hand, does not contemplate a scheme or conspiracy, but rather a single, instantaneous act, similar to the failure to register for the draft in *Toussie*.  There is no evidence that Congress intended multiple acts in violation of § 331(k) to create a continuing offense, and the Government offers no rationale for why the doctrine should apply here.  Because the offense charged in Count III of the indictment is not a continuing offense, the count must be partially dismissed insofar as it encompasses conduct outside the statute of limitations. In Count III, the Government may only prosecute Mr. Salerno for conduct violating 21 U.S.C. § 331(k) that occurred after October 19, 2005.

### 3. Insufficiency Under Rule 7

Mr. Salerno's final challenge to the indictment alleges that it is insufficient under Federal Rule of Criminal Procedure 7.  Rule 7(c)(1) requires an indictment to contain "a

---

[2] Congress later passed a statute clarifying that failure to register was a continuing offense.  *See United States v. Eklund*, 733 F.2d 1287, 1296-97 (8th Cir. 1984).

plain, concise, and written statement of the essential facts constituting the offense charged"

and a statement of which statutes the defendant is alleged to have violated.  Fed. R. Crim.

P. 7(c)(1).  Motions claiming a defect in the indictment must be raised prior to trial.  Fed. R.

Crim. P. 12(b)(3(B).  In ruling on a motion to dismiss an indictment, the court's role is not to

determine the sufficiency of the evidence, but to determine whether the allegations in the

indictment are sufficient to charge the named offense.  *See United States v. DeLaurentis,*

230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79

(1962)).  Determining whether an indictment is sufficient requires a court to examine "(1)

whether the indictment 'contains the elements of the offense intended to be charged and

sufficiently apprises the defendant of what he must be prepared to meet,' and (2) enables

the defendant to plead an acquittal or conviction in bar of future prosecutions for the same

offense."  *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000) (quoting *Gov't of the V.I.*

*v. Moolenaar*, 133 F.3d 246, 248 (3d Cir. 1998)).  The court must accept as true the factual

allegations set forth in the indictment.  *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d

Cir. 1990).

　　　Mr. Salerno's motion to dismiss for insufficiency will be denied because the indictment

contains the elements of all three offenses and sufficiently gives Mr. Salerno notice of the

charge. Mr. Salerno argues that the indictment does not allege any false statements or

explain their materiality and does not explain how the alleged activity of Salerno's Pharmacy

constituted a fraud.  As far as false statements, Count I of the indictment lists the elements

of a claim under 18 U.S.C. § 1035 and explains that the violation occurred when Mr. Salerno

"caused the submission of claims for payment from the Pennsylvania Medicaid Program for

prescription medications that he knew or had reason to know were [] 'misbranded' pursuant

to the Federal Food Drug and Cosmetic Act." Thus, the false statement was allegedly made when Mr. Salerno submitted claims without disclosing the misbranding. As for fraud, Count II lists the elements of a claim under 18 U.S.C. § 1347 and explains that the violation occurred when Mr. Salerno "caused to be submitted claims for payment of dispensed pharmaceuticals knowing or having reason to know that the pharmaceuticals were [] 'misbranded' pursuant to the Federal Food Drug and Cosmetic Act." Thus, the fraud was Mr. Salerno's alleged receipt of payment for selling drugs that were unlawfully mislabeled.

Mr. Salerno also objects on the grounds that he may face double jeopardy because all three counts allege activity over a wide span of time, without listing specific instances. This argument fails for two reasons. First, the Third Circuit has held that an indictment alleging a scheme over a period of time can be sufficient. *See United States v. Johnstone*, 856 F.2d 539, 541-42 (finding that a conspiracy count of an indictment was sufficient where it alleged activity "[f]rom in or about January of 1985, and continuing thereafter to on or about December of 1986"). Second, as noted above, the Government concedes that the statute of limitations has run on all three offenses, and thus Mr. Salerno faces no danger of double jeopardy. Because the indictment lists the elements of the offenses, gives Mr. Salerno notice of the charges, and does not put him in danger of double jeopardy, his motion to dismiss on sufficiency grounds will be denied.

## B. Motion for Bill of Particulars

Mr. Salerno moves under Federal Rule of Criminal Procedure 7(f) for a bill of particulars. A bill of particulars is a "formal, detailed statement of the claims or charges brought" by a prosecutor. Black's Law Dictionary 184 (9th ed. 2009). Whether to grant a motion for a bill of particulars is within the discretion of the trial court. *United States v.*

*Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971).  A bill of particulars "is not to be used by the defendant as a discovery tool," *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1389 (W.D. Pa. 1983), but rather is appropriate only when "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial," *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).  In determining whether to grant a motion for a bill of particulars, courts must take into account "numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of facts before it is in a position to do so."  *Id.*  Additionally, "the court may consider not only the indictment, but also all the information that has been made available to the defendant."  *Fischbach*, 576 F. Supp. at 1389.  There is less need for a bill of particulars in cases where the Government provides substantial discovery.  *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).

Mr. Salerno specifically seeks notification of "(1): when each instance of alleged misbranding event occurred; (2) which medications or medication containers were allegedly misbranded; and (3) which submissions to the Pennsylvania Medicaid Program allegedly included misbranded pills."  Def.'s Br. at 5.  Without this information, Mr. Salerno argues, he will be severely hampered in his ability to prepare an adequate defense to the charges.  To support his position, he points to *United States v. Salko*, where I granted the defendant's motion for a bill of particulars as to the dates and amounts of reimbursements in a health fraud case.  *See* No. 1:07-CR-0286, 2008 WL 4006747 at *11.  But in *Salko*, I noted that there were "no representations that the Government ha[d] provided Salko with this information through discovery."  *Id.*  In this case, on the other hand, the Government

12

provided Mr. Salerno with discovery in the form of a CD-ROM containing a listing of each of the 250,952 allegedly fraudulent claims.  This discovery allows Mr. Salerno to properly prepare for his defense. A bill of particulars might be necessary if the Government was only bringing fraud charges against Mr. Salerno regarding several specific instances of fraud, and he needed to know what specific claims he should investigate. But here the Government is charging Mr. Salerno on a theory of a scheme of fraud in which misbranding was so common that all pharmacy stock was affected, and therefore all transactions during the given time period were allegedly fraudulent–so no specific details about a particular claim are necessary to mount a defense. Additionally, requiring the Government to provide further details might lock it into a particular theory of the case at this early stage.  Therefore, Mr. Salerno's motion for a bill of particulars will be denied.

## C. Motion to Strike Surplusage

Mr. Salerno also moves to strike paragraphs 1 and 8 of the indictment that refer to the Pennsylvania Pharmacy Act ("PPA").  Federal Rule of Criminal Procedure 7(d) states that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  "Motions to strike surplusage are rarely granted," but the Third Circuit has held that it is appropriate to strike surplusage when it is both irrelevant and prejudicial. *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006).[3]  In *United States v. Alsugair*, the District of New Jersey granted a motion to strike surplusage where an indictment referred to a conspiracy between the Defendant, two specific individuals, and "others."  256 F. Supp.

---

[3] Citing *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006), the Government argues that in order to strike surplusage, the challenged language must be inflammatory as well as irrelevant and prejudicial.  This is not, however, the standard in the Third Circuit.

2d 306, 317-18 (D.N.J. 2003).  The court struck the multiple references to "others," noting that it could prejudice the defendant "by leading the jury to believe that there exist[ed] a broader scope of illegal activity than [was] actually charged in the indictment."  *Id.* at 317.

Like the references to "others" in *Alsugair*, the references to the PPA here are prejudicial because they imply that Mr. Salerno engaged in illegal activity not charged in the indictment.  Mr. Salerno correctly asserts that the section of the PPA cited by the Government, 63 P.S. § 390-5(a)(9)(xi), only prohibits actions by pharmacists.[3]  Because Mr. Salerno was not a pharmacist, he cannot have violated this section of the PPA–and in fact, Mr. Salerno has not been charged with violating the PPA.  A jury reading the indictment, however, would likely receive the impression that Mr. Salerno did violate that section–and might assume that he therefore violated the federal statutes at issue.

Further, the Government has failed to demonstrate that this section of the PPA is relevant to Mr. Salerno's charges.  It argues that the PPA is necessary to explain Mr. Salerno's scheme to defraud, stating that "[a] violation of state law and/or federal misbranding law during the dispensing process and subsequent reimbursement creates a

_____

[3] The section states:
(a) The board shall have the power to refuse, revoke or suspend the license of any pharmacist upon proof satisfactory to it that the pharmacist:
. . . .
(9) Is guilty of grossly unprofessional conduct.  The following acts on the part of a pharmacist are hereby declared to constitute grossly unprofessional conduct of a pharmacist:
. . . .
(xi) The acceptance back and redistribution of any unused drug, or a part thereof, after it has left the premises of any pharmacy, whether issued by mistake or otherwise, unless it is in the original sealed container with the name, lot number and expiration date on the original intact manufacturer's label.
63 P.S. § 390-5(a)(9)(xi).

false certification by the payee . . . as to the submission for payment." But if a violation of

federal misbranding law is sufficient to show fraud, which the Government's "and/or"

language suggests, then the discussion of the state statutory scheme is unnecessary. It is

also irrelevant given that Mr. Salerno has not actually violated the referenced section of the

statute. Because the references to the PPA are likely to mislead and prejudice the jury and

they are not relevant to the federal violations alleged, Mr. Salerno's motion to strike

surplusage will be granted.

## D. Discovery Motions

Finally, Mr. Salerno makes four discovery motions. "There is no general constitutional

right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). A

defendant's right to discovery is instead delineated in statutes and judicially crafted rules.

*See, e.g.*, Fed. R. Crim. P. 16 (establishing discovery rules for criminal cases); *Brady v.

Maryland*, 373 U.S. 83 (1963) (holding that due process requires certain discovery

procedures). Here, Mr. Salerno has submitted a motion for early disclosure of Jencks

material, a motion to inspect physical evidence and *Brady* material, a request for 404(b), and

a motion to produce and preserve notes, reports and evidence. I will address each in turn.

### 1. Disclosure of Jencks Act Material

Mr. Salerno requests an order compelling the government to provide early disclosure

of Jencks material at least thirty days prior to the commencement of trial. The Jencks Act

states that in federal criminal prosecutions, the Government need not produce any statement

or report made by a Government witness or prospective Government witness (excluding the

defendant) until the witness has testified on direct examination at trial. 18 U.S.C.A.

§ 3500(a). After direct examination, however, "the court shall, on motion of the defendant,

15

order the United States to produce any statement . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified. *Id.* § 3500(b). Federal Rule of Criminal Procedure 26.2 has extended the Jencks Act so that production of statements is also required after testimony of a Government witness at a preliminary hearing, sentencing, probation hearing, detention hearing, or Rule 8 hearing. Fed. R. Crim. P. 26.2(g).

A district court does not have the power to compel early production of Jencks material. *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978)*; United States v. Moyer*, 726 F. Supp. 2d 498, 513 (M.D. Pa. 2010). Mr. Salerno cites *United States v. Cordaro*, where I ordered the production of Jencks materials seven days before trial. Order, No. 3:10-CR-075, at 7 (Mar. 18, 2011) (Doc. 90). In that case, however, the Government had already voluntarily complied with a request for early Jencks Act material, and thus my order was a mere formality. Although the Government may choose to provide the material earlier as a courtesy, *see Murphy*, 569 F.2d at 773 n.5, nothing in the Jencks Act, the Federal Rules of Criminal Procedure, or the precedent of the Third Circuit requires it. Therefore, Mr. Salerno's motion will be denied.

### 2. Physical Evidence and *Brady* Material

Mr. Salerno moves for the production of *Brady* material, grand jury transcripts, and statements made by him or any of his agents. He further seeks a certification from the United States that it complied with its discovery duties.

### i. *Brady* Material

The Supreme Court determined in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused . . . violates due

process where the evidence is material either to guilt or punishment," *id.* at 87.  The Court

later extended this holding to include evidence which may be used to impeach the testimony

of a government witness, if that witness's credibility may have an effect on the jury's

determination of guilty or innocence.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

There is a duty to disclose *Brady* evidence even in the absence of a request from the

defendant.  *United States v. Agurs*, 427 U.S. 97, 107 (1976).  Further, a prosecutor "has a

duty to learn of any favorable evidence known to others acting on the government's behalf

. . . including the police."  *Kyles v. Whitney*, 514 U.S. 419, 433-34 (1995).

The Government acknowledges that it has duties under *Brady* and *Giglio* and

confirms that it will comply with those duties. Mr. Salerno maintains, however, that the

Government has not turned over statements by pharmacy employees who were unaware of

any misbranding, arguing that this is exculpatory evidence. Statements by a knowledgeable

witness that do not implicate a defendant may sometimes qualify as "negative" exculpatory

evidence that must be produced under *Brady*. *See Jones v. Jago*, 575 F.2d 1164, 1168 (6th

Cir. 2005) (ordering new trial based on *Brady* violation where prosecutor failed to disclose

eyewitness's statement that made no reference to presence or participation of defendant);

*see also United States v. Hernandez*, No. 88-5210, 1989 WL 150133, at *3 (9th Cir. Dec. 6,

1989) ("[W]e reject the government's contention that negative exculpatory evidence may

never be available under *Brady.*").  But regardless of whether the statements here are

exculpatory, "*Brady* does not compel the government to furnish a defendant with information

which he already has or, with any reasonable diligence, he can obtain himself." *United States

v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005) (internal quotations omitted) (quoting *United

States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)). Mr. Salerno has knowledge of all his

17

former employees, so with reasonable diligence, he could obtain statements from them on his own. Thus, Mr. Salerno's motion for *Brady* material will be denied.

### ii. Statements By Defendant or His Agents

The Government must produce statements made by Mr. Salerno if they fall under Federal Rule of Criminal Procedure 16. Rule 16 requires the government to disclose to a defendant any oral statements made by the defendant in response to interrogation by a government agent, Fed. R. Crim. P. 16(a)(1)(A), and any written or recorded statements by the defendant within the government's possession, Fed. R. Crim. P. 16(a)(1)(B). Mr. Salerno, however, requests all statements made by him, regardless of whether they were made to a government agent or whether they were written or recorded. This request is too broad and falls outside the confines of the Rules of Criminal Procedure. His motion to compel production of his own statements will be granted, but only as to statements covered by Rule 16.

Further, the Government need not produce any statements made by Mr. Salerno's agents. Mr. Salerno argues that in *United States v. Bainbridge Management, Inc.*, Nos. 01 CR 496-1, 01 CR 469-6, 2002 WL 538777, at *14 (N.D. Ill. Apr. 11, 2002), the Northern District of Illinois required the Government to produce statements made by the defendant's agent. But as I noted in *United States v. Salko*, No. 1:07-CR-0286; 2008 WL 4006747, at *13 (M.D. Pa. Aug. 26, 2008), the defendant in *Bainbridge* was an organization and not an individual. Organizational defendants are entitled to the statements of their agents under Rule 16(a)(1)(C). Because Mr. Salerno is an individual defendant, *Bainbridge* and Rule 16(a)(1)(C) are inapplicable, and thus his motion to compel production of agency and adoptive statements will be denied.

18

### iii. Grand Jury Transcripts

Mr. Salerno is not entitled to the transcripts of the grand jury proceedings.  The Supreme Court has consistently emphasized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  *Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).  Despite this general policy of secrecy, the Federal Rules of Criminal Procedure allow the court to order disclosure of grand jury matters "preliminarily to or in connection with a judicial proceeding."  Fed R. Crim. P. 6(e)(3)(E)(i).[4] In order to obtain a grand jury transcript under Rule 6(e)(3)(E)(i), parties "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."  *Douglas Oil*, 441 U.S. at 222.  Parties must also demonstrate a "particularized need" for the disclosure, such as impeachment or refreshing the recollection of a witness.  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958); *see also In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir. 1982).  In *United States v. Minerd*, 299 Fed. App'x 110 (3d Cir. 2008), a defendant requested grand jury transcripts on the grounds that they were necessary to prove that the government committed fraud before the grand jury.  The Third Circuit upheld the district court's decision to deny the defendant's motion, determining that the "vague allegation" did not constitute a particularized need where nothing in the record showed a basis for dismissal of the indictment.  *Id.* at 111-12.

---

[4] Rule 16(e)(3)(E) also lists four other circumstances where disclosure is authorized, but they are inapplicable here.

Mr. Salerno has not met the standard for disclosure of grand jury materials.  Like the defendant in *Minerd*, Mr. Salerno asserts only vague reasons why disclosure is necessary.  He argues that he has a particularized need because the charges are duplicitous, the acts occurred outside the statute of limitations, and he must be informed of the factual basis of the counts to prevent double jeopardy.  But he fails to explain how production of the grand jury transcript would cure duplicity and untimeliness or prevent double jeopardy–and I have already addressed the issues of duplicity, untimeliness, and double jeopardy in response to Mr. Salerno's other motions.  Finally, Mr. Salerno has also failed to prove that the need to disclose is greater than the need for secrecy.  Therefore, his motion will be denied.

### iv. Certification

Mr. Salerno's request for a certification from the prosecution will be denied. Mr. Salerno states that he seeks the certification pursuant to *Strickler v. Greene*, 527 U.S. 263 (1999) and *Kyles v. Whitley*, 514 U.S. 419 (1995).  Although these cases discuss the prosecution's duty of disclosure, they do not outline any affirmative duty to provide a certification of compliance. Mr. Salerno also cites the Department of Justice guidelines, but again, these do not require the Government to certify that it has met its obligations.  In sum, Mr. Salerno's motion for certification does not have any basis in law and so cannot be granted.

### 4. Rule 404(b)

Because the Government has agreed to provide defense counsel with reasonable pretrial notice of 404(b) evidence, there is no need to compel production.  Federal Rule of Evidence 404(b) states that upon request of the defendant, the prosecution shall provide reasonable pretrial notice of any evidence of other crimes, wrongs, or acts that it intends to

introduce at trial.  The Government agrees to comply with Salerno's request for reasonable notice of any uncharged misconduct evidence it will offer under Rule 404(B), acknowledging the benefits of early disclosure.  Therefore, Mr. Salerno's motion will be denied.

### 5. Preservation and Production of Notes, Reports, and Evidence

The Government also avers that it will honor Mr. Salerno's request to preserve and produce for inspection all notes taken as part of the inspection.  The Government admits that the handwritten notes of the Pennsylvania Office of Attorney General Medicaid Fraud investigators have been destroyed based on that office's standard policy.  Nothing suggests, however, that there is any threat that other notes will be destroyed.  Thus, based on the Government's agreement to cooperate, Mr. Salerno's motion will be denied.

### III. Conclusion

For the reasons explained above, Defendants' motions will be granted in part and denied in part.  An appropriate order follows.

 December 9, 2011                                    /s/ A. Richard Caputo
Date                                                A. Richard Caputo
                                                    United States District Judge

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

                                CRIMINAL NO. 3:10-CR-301

      v.

                                (JUDGE CAPUTO)

BENNY SALERNO,

      Defendant.

<u>**ORDER**</u>

**NOW**, this __9th__ day of December, 2011, **IT IS HEREBY ORDERED** that:

(1)    Defendant's Motion to Produce and Preserve Notes, Reports and Evidence (Doc. 23) is **DENIED.**

(2)    Defendant's Motion to Inspect Physical Evidence and Brady Material (Doc. 25) is **GRANTED in part and DENIED in part** as follows:

        (a) Defendant's request for his own statements pursuant to Rule 16 is **GRANTED.** The United States must provide Salerno with his statements within thirty (30) days.

        (b) Defendant's requests for *Brady* material, agent statements, grand jury transcripts, and certification are **DENIED.**

(3)    Defendant's Motion for Bill of Particulars (Doc. 27) is **DENIED.**

(4)    Defendant's Motion to Strike Surplusage and Unnecessary, Prejudicial Portions of the Indictment (Doc. 29) is **GRANTED.** Paragraphs 1 and 8 shall be struck from the Indictment.

(5)    Defendant's Motion for Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure 262 (Doc. 31) is **DENIED.**

(6)    Defendant's Request for the Accused Pursuant to 404(b) is **DENIED.**

(7)     Defendant's Motion to Dismiss (Doc. 35) is **GRANTED in part and DENIED in part.**
        The portion of Count III of the Indictment that targets conduct that occurred prior to
        December 19, 2005 is hereby **DISMISSED.**


                                                     /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge